**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AXIVA HEALTH SOLUTIONS, INC.,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **INFUSION CENTER OF** | : | |
| **PENNSYLVANIA,** | : | **No. 21-5313** |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                                          APRIL 6, 2022

Axiva and Infusion Center of Pennsylvania (iCPA) have resolved the substance of their dispute regarding iCPA's plans to rebrand as "Avita" by entering a stipulated permanent injunction. Axiva now seeks attorneys' fees and costs for the action. The Court will grant the motion in part, with the admonition that the reasoning of the ruling should infuse both parties with a dose of common sense that can and should resolve the entire dispute.

### BACKGROUND

Axiva and iCPA provide infusion services to patients in Pennsylvania. Upon ascertaining that iCPA had begun rebranding itself as "Avita,"[1] Axiva sent a cease-and-desist letter to iCPA on November 12, 2021. Counsel for iCPA responded on November 22, 2021, asserting that iCPA/Avita would not comply with the cease-and-desist demand for several reasons. iCPA did not consider Axiva as a competitor because Axiva promotes vitamin infusions and other med-spa like services, in contrast to iCPA/Avita providing medical infusion services for the chronically ill. Its rebranding began in May 2021 and was, in its own assessment, "*painstakingly* documented." Doc. No. 15-2, at 6. And, as an additional cause for distinguishing itself, Axiva is registered in New Jersey, where Avita does not operate.

---

[1] Both "Avita" and "Axiva" are pronounced with a long "ee" sound for the letter "i." Compl. ¶¶ 10, 24.

Two weeks after iCPA/Avita responded to the cease-and-desist letter, on December 3, 2021, Axiva simultaneously filed a complaint and a motion for a temporary restraining order to stop the iCPA rebranding activity. Axiva asserted Lanham Act and common law claims for trademark infringement and unfair competition based on the following alleged infringement:



Specifically, Axiva asserted that iCPA "has poached not only the exact font and color palette of the AXIVA Stylized Mark—that is, medium plum letters surrounding a dark plum letter—it has even included a small blue droplet hovering over one of the interior letters, quite similar to the droplets hovering over an interior letter of the AXIVA Stylized Mark." *Id.* ¶ 23. Axiva also sought a TRO and preliminary injunction to enjoin iCPA from infringing upon its service marks by "[a]dvertising, soliciting, marketing, or otherwise using in any way the AXIVA Intellectual Property and confusingly similar versions thereof, including but not limited to the marks AVITA and AVITA INFUSION CENTERS, in connection with the provision of medical and/or wellness infusion services." Doc. No. 2-2, at 2.

The Court held a conference on December 14, 2021 to discuss the TRO procedures. At this conference, counsel for iCPA represented that iCPA had already rebranded to Avita and so the TRO motion was moot. The Court encouraged the parties to discuss a standstill agreement while the Court took the TRO filings under consideration.

Axiva then "immediately" hired an investigator to drive to all of iCPA's locations to investigate iCPA's lawyer's assertion that the rebranding had already taken place. Doc. No. 15-1,

at 7.  The investigator found no use of the Avita name at any of iCPA's six locations.  On December 16, iCPA's lawyer met with his client and then told opposing counsel for Axiva that he had been mistaken and the rebranding had actually not yet begun.  Axiva complains of a loss of time and money spent investigating this issue.  Axiva also argues that, although iCPA's counsel represented at the conference that iCPA did not offer at-home infusion treatments (in order to distinguish the markets for the two companies), iCPA's website says it does do so.

The parties settled the substance of the claim on December 16, 2021, which was two days after the TRO conference and 13 days after the initiation of litigation.  They agreed to a stipulated permanent injunction, which this Court entered on January 12, 2022.  Axiva then filed a motion for attorneys' fees and costs.  Axiva seeks a total of $28,409 in attorneys' fees and costs for the time spent on the case in November and December 2021 (by one senior associate, Julie Latsko), the filing and service fees, and the private investigator fee.

The Court held a hearing on the fees request, at which iCPA presented its objections to the motion and then filed an amended memorandum in opposition.  Invoking the applicable statute, iCPA objects that the case is not "exceptional" for purposes of allowing fees under the Lanham Act, and that the amount of time expended for which a fee award is sought was disproportionate to a 13-day case.

### Legal Standard

Under the Lanham Act, courts have discretion to grant attorneys' fees to the "prevailing party" only "in exceptional cases" of trademark infringement.  15 U.S.C. § 1117(a).  The statute "does not define an 'exceptional case.'"  *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 279–80 (3d Cir. 2000).  The Court of Appeals for the Third Circuit has held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength

of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314 (3d Cir. 2014).

A request for attorneys' fees must be "reasonable." 15 U.S.C. § 1117(a). "Although the availability of alternate sanctioning tools may factor into the district court's decision whether to award fees under [§ 1117(a)] in a particular case, it does not bar an award of fees under the Act." *Securacomm Consulting, Inc*., 224 F.3d at 282.

**Analysis**

**I.      Attorneys' Fees**

Axiva seeks $28,409 in attorneys' fees for time spent by one of its lawyers, Ms. Latsko, in November and December 2021.

**A.  Prevailing Party**

In order to obtain attorneys' fees, Axiva must first count as a "prevailing party" under the Lanham Act. 15 U.S.C. § 1117(a). This means Axiva must have "been awarded some relief *by the court*." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Hum. Res.*, 532 U.S. 598, 603 (2001) (emphasis added). In contrast to a private settlement, "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees" because they are "a court-ordered change in the legal relationship between the plaintiff and the defendant." *Id.* at 604 (internal quotation marks omitted). Here, the parties reached a Stipulated Permanent Injunction enforced by a court order. Axiva thus counts as a prevailing party because it has been awarded some relief by the Court, albeit because the Court signed off on an agreed upon stipulated injunction, regardless of whether iCPA admits liability (it does not).

4

### B.  Exceptional Case

Next, the Court must determine whether this is an "exceptional" case.  15 U.S.C. § 1117(a).

iCPA insists that this case is not exceptional because it did not engage in culpable conduct.  True,

prior to 2014, that was at least nominally the test in this Circuit.  But the Supreme Court, in *Octane*

*Fitness*, broadened the definition of "exceptional."  *Octane Fitness, LLC v. ICON Health &*

*Fitness, Inc.*, 572 U.S. 545 (2014).  Now, a "district court may find a case 'exceptional,' and

therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits

of the positions taken by the parties or (b) the losing party has litigated the case in an "unreasonable

manner.'"  *Fair Wind Sailing*, 764 F.3d at 315.[2]

"The district court should exercise its discretion and determine whether a case is

exceptional to merit attorney fees on a case-by-case basis considering the totality of the

circumstances."  *BP Am. Inc. v. Diwan Petrol Inc.*, No. 21-cv-2437, 2021 WL 5163206, at *2

(E.D. Pa. Nov. 5, 2021).  Courts have found an "unusual discrepancy in the merits" of a party's

position where the respondent's litigation position had "at least a tinge of plausibility" but "did not

rise to the minimal level of merit that would preclude an award of attorneys' fees."  *Renna v. Cnty.*

*of Union, N.J.*, No. 2:11-cv-3328, 2015 WL 1815498, at *4 (D.N.J. Apr. 21, 2015).  Courts may

consider a list of factors including "frivolousness, motivation, objective unreasonableness (both in

the factual and legal components of the case) and the need in particular circumstances to advance

considerations of compensation and deterrence."  *Octane Fitness, LLC v. ICON Health & Fitness,*

*Inc.*, 572 U.S. 545, 554 n.6 (2014) (internal quotation marks omitted).

The Court finds this is an "exceptional" case under the most recent analysis.  First, the

logos share a marked similarity in the names, font, color, and design. The two logos, "Axiva" and

---

[2]  "Culpability, while not a prerequisite for finding a case exceptional, may factor into the court's analysis."
*BP Am. Inc.*, 2021 WL 5163206, at *2.

"Avita," share all but one letter, and they are pronounced similarly. The sans serif fonts are functionally identical, with the sole difference being that the "v" in "Axiva" has a pointed bottom while the "v" in "Avita" has a flat bottom. The logos are both dark purple, with droplets over the middle of the logo. Given such overwhelming similarities, customer confusion is likely to result. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

Second, the Court is not convinced that iCPA did the proper reasonable due diligence to ensure that its new mark would not infringe on existing trademarks.  Axiva argues that the marketing efforts surrounding the rebranding "were, without question, the product of intentional copying of the AXIVA Intellectual Property, with the transparent goal of freeriding on and exploiting the hard-earned goodwill associated therewith."  Doc. No. 15-1, at 4.  iCPA insists that it did not purposefully copy Aviva.  Both iCPA's owner, Dr. Emma Singh, and its Chief Operating Officer, Kati Cohn, testified that they developed "Avita" on their own.

Emma Singh, iCPA's owner, testified that she came up with the "Avita" name based on its meaning in Sanskrit and that she utilized the color scheme from another company she owned called Healthcare Evolution.  She stated that the font is called Mansaray and she chose it based on a vacation she enjoyed in Mansaray.  Dr. Singh testified that she did not seek to knowingly copy Axiva's name.  She testified that she chose the name Avita following a group effort to come up with the name.

Testifying after Dr. Singh, iCPA's Chief Operating Officer, Kati Cohn, then stated that she (Ms. Cohn) came up with the name Avita.  She testified that she had started the process of rebranding in July 2021.  She testified that she conducted due diligence on similar company names and that Axiva didn't "register" as an issue in her competitor searches because she did not consider

vitamin infusion services as competitors and she does not consider the logos similar.[3]   But the Court does not find it credible that one searching for competitors for trademark infringement purposes could disregard such a markedly similar logo for another infusion company.

Third, despite the "painstakingly documented" process referenced in iCPA's response to the cease-and-desist letter, iCPA was unable to produce any such documentation for the Court's review when asked at the hearing.   iCPA did not introduce *any* exhibits in opposition to Axiva's motion for attorneys' fees.   Given the notable similarity in the two logos, the Court concludes that iCPA's position does not rise to the level of merit that would preclude an award of attorneys' fees.

Counsel for iCPA also made unreasonable representations in his response to the cease-and-desist letter and at the TRO conference.   The cease-and-desist letter response stated that iCPA's rebranding began in May 2021 and was "painstakingly documented." Doc. No. 15-2, at 6.   Counsel for iCPA represented at the TRO conference that the rebranding had already taken place, arguing that Axiva's requested TRO to prevent the rebranding was moot.   Counsel for iCPA later explained that he had not met with his client yet when he made this representation at the TRO conference, but, even setting aside a lawyer's duty to confer with his or her client and to make justifiable representations to the Court, the earlier cease-and-desist letter response also incorrectly represented that the rebranding had begun months prior with extensive documentation.   As iCPA's private investigator determined and Dr. Singh clarified at the fees hearing, no "widespread" rebranding had taken place.

Considering the undeniable similarities between the two names and logos, as well as the circumstances surrounding iCPA's response to the cease-and-desist letter and representations at

---

[3]  Ms. Cohn also testified that the Axiva name did not show up as registered with the U.S. Patent and Trademark Office because Axiva did not register the name until shortly before commencing this litigation.

the TRO conference, the Court concludes that there is an unusual discrepancy in the merits of the positions taken by the parties.  The Court finds that this case is an "exceptional" case.

### C.  Reasonableness of Requested Fees

The Court must next determine whether the amount requested is reasonable.  "The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).   "A prevailing party is not automatically entitled to compensation for all the time its attorneys spent working on the case; rather, a court awarding fees must decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005) (internal quotation marks omitted).  "Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  If they fail to do so, the court reviews any objections made by the opposing party.  "[O]nce the opposing party has made a sufficiently specific objection to the substance of a fee request, the court has a great deal of discretion to adjust the fee award in light of these objections." *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 212 (3d Cir. 2000) (internal quotation marks omitted).

"There is no precise rule or formula for making [attorneys' fee] determinations." *Hensley*, 461 U.S. at 436.  In dealing with excessive fee requests, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd*., 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks omitted); *see also Hensley*, 461 U.S. at 434 ("The district court also should exclude from this initial fee calculation hours that were not reasonably expended.") (internal quotation marks omitted).

Axiva requests an award of the following attorneys' fees plus post-judgment interest: $8,216 for 20.8 hours of work in November 2021 drafting the complaint and motion for a temporary restraining order and $19,276 for 48.8 hours of work in December 2021 drafting the same filings and supporting materials, discussions with the client, preparing for and attending a conference in the Court's Chambers, corresponding with opposing counsel, drafting letters, and drafting and negotiating the stipulated injunction.  Doc. No. 15-1, at 10.  At the fees hearing, counsel for Axiva submitted invoice summaries with line item billing for these fees.  Axiva excludes fees incurred in January 2022, as well as all hours billed by the partner handling the matter (Mr. Cohen), a paralegal, and a junior associate.

The submitted bills are for Ms. Latsko, who is a senior associate with eight years of experience.  Her $395 hourly rate compares acceptably with fees approved by other courts in this District.  *See, e.g.*, *BP America*, 2021 WL 5163206, at *2 (finding as reasonable a request for $8,878 in fees for 22.9 hours of work by an associate with three years of experience, at a rate of $380 per hour).

In opposing the motion, iCPA objects that the amount of work expended is disproportionate to the needs of such a brief period of litigation.  iCPA argues that $28,409 is an "exorbitant" amount in a case that lasted only two weeks and involved only one meeting, without any movement toward discovery.

The Court finds that it is appropriate to reduce the requested fees to only those that can be justified by the brief life of the case.  The reasons that the Court finds this case exceptional (as one where the infringement was obvious) also cut the other way in assessing the level of effort that was reasonably necessary to reach an exceptionally early settlement.  Axiva has not directed the Court to any case law to support a comparable award for litigation that settled so quickly.

9

For example, *BP America* was a recent case where the plaintiff filed a complaint and then a motion for default judgment.  The court found that a request for $8,878 in fees for 22.9 hours of associate work was reasonable for conducting legal research and drafting the complaint and motion for default judgment.  2021 WL 5163206, at *2.  Axiva similarly seeks fees for an associate researching and drafting the complaint and an unopposed motion.[4]  Although the parties did attend a short conference with the Court, iCPA had not filed an answer to the complaint or a response to the TRO motion, and the parties settled quickly (albeit with the Court's strong encouragement).  Yet Axiva's request is over three times the magnitude of the fee request in *BP America*.

This litigation settled after *the Court* encouraged the parties to discuss a standstill agreement, which Axiva had failed to attempt prior to the Court conference.  Indeed, counsel for Axiva confirmed at the fees hearing that they had not discussed a standstill at all before the conference. This lack of communication is particularly surprising, given that the relief Axiva sought is an "extraordinary remedy."  *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).  Of the 68.8 hours requested here, the Court notes that over half (38.3 hours) of this time was spent preparing the "TRO package" or concurrently revising the TRO package and complaint before the December 14th conference.  Invoice Summary, Nov. 24, 2021–Nov. 30, 2021; Invoice Summary, Dec. 1, 2021–Dec. 3, 2021.  All of the requested hours in November 2021 were dedicated to researching and drafting the TRO Package.  Invoice Summary, Nov. 24, 2021– Nov. 30, 2021.

Based on these considerations, the Court finds that Axiva has not carried its burden to show the number of hours expended is reasonable.  Although it is appropriate that Axiva has narrowed its request to exclude the supervising partner, the hours are still unreasonably high for the needs

---

[4]  The Court notes that only 6.3 of the hours logged are associated with negotiating the stipulated injunction package. Invoice Summary, Dec. 22, 2021–Dec. 30, 2021.

of the case. Based on the Court's assessment of the testimony at the fees hearing, it is clear that

this case did not require the large amounts of time expended, particularly once iCPA's counsel

finally conferred with his client in December and then immediately settled. Recognizing that the

Court's exercise of its discretion does not demand an exact formula, the Court will reduce the

hours requested for the month of November 2021 to one-half ($4,108) and the hours requested for

the month of December 2021 to one-third ($6,425.33), for a total fee award of $10,533.33, plus

any applicable post-judgment interest after this Order is entered.[5]

## II.    Costs

Axiva also requests costs, including $402 for filing the complaint, $65 for service of the

complaint, and $450 for a private investigator to visit iCPA facilities to determine the status of

their rebranding to the "Avita" name.

A prevailing party[6] is entitled to the costs of the action unless prohibited by federal statute,

other rules, or a court order. *See* Fed. R. Civ. P. 54(d).[7] Such costs may include filing fees and

private investigator fees. *See, e.g.*, *Rouse v. Comcast Corp.*, No. 14-cv-1115, 2015 WL 1725721,

at *14 (E.D. Pa. Apr. 15, 2015) (filing fees); *Sprint Commc'ns Co. L.P. v. Chong*, No. 13-cv-3846,

2014 WL 6611484, at *9 (S.D.N.Y. Nov. 21, 2014) (private investigator fees). A court may

exercise its discretion to deny unnecessarily incurred costs. *Smith v. Se. Pa. Transp. Auth.*, 47 F.3d

97, 99 (3d Cir. 1995).

---

[5]  Under 28 U.S.C. § 1961(a), "post-judgment interest on an attorney's fee award runs from the date that the District Court actually quantifies the award." *Eaves v. Cty. of Cape May*, 239 F.3d 527, 527–28 (3d Cir. 2001).

[6]  As discussed above, courts interpret the concept of a "prevailing party" broadly. Here, it is sufficient that Axiva achieved "some of the benefit . . . sought in bringing suit" through the stipulated permanent injunction. *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002).

[7]  Federal Rule of Civil Procedure 54(d) establishes that costs other than attorneys' fees should be awarded to the prevailing party unless a federal statute provides otherwise. Costs for trademark actions are permitted under the same provision allowing attorneys' fees in exceptional cases. *See* 15 U.S.C. § 1117(a).

Axiva did not justify the need for a private investigator at the hearing.  It is unclear why Axiva acted so quickly in "immediately" hiring an investigator rather than first following up with opposing counsel, given that Axiva found counsel's statement that the rebranding had already taken place to be "shocking news."  Doc. No. 15-1, at 7.  The timeline suggests that Axiva immediately hiring the private investigator was an unreasonable overreaction:  counsel for iCPA made the statement triggering the investigation at the December 14 conference, Axiva charged for private investigator fees incurred on December 15, and the parties agreed to settle on December 16.  Based on this timeline, the Court finds that the private investigator costs were unreasonably incurred and will deny this portion of Axiva's request.

As to the other requested expenses, courts regularly award costs for filing and serving a complaint.  *See, e.g.*, *Pelc v. Nowak*, 596 F. App'x 768, 771 (11th Cir. 2015) (affirming award of $400 for filing fees and service of process costs); *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 539 (D.N.J. 2008) (awarding $250 filing fee and $75 service fee in Lanham Act action).  Here, Axiva has submitted supporting documentation for the costs of $402 for the filing fee and $65 for service of process, including a receipt for the service of process payment.  Dec. 2021 Invoice Summary, at 6.  The Court will award the requested $467 in costs for the filing fee and service of process, plus post-judgment interest on costs beginning to accrue on the date of this award.[8]

---

[8] Post-judgment interest accrues on costs in addition to attorneys' fees.  *See Devex Corp. v. Gen. Motors Corp.*, 749 F.2d 1020, 1026 (3d Cir. 1984); *Montgomery Cnty. v. Microvote Corp.*, No. 97-cv-6331, 2004 WL 1087196, at *9 (E.D. Pa. May 13, 2004) ("The Third Circuit [Court of Appeals] has held that post-judgment interest accrues on costs.").

## CONCLUSION

For the foregoing reasons, the Court grants the motion for attorneys' fees and costs in part.

An appropriate order follows.

**BY THE COURT:**

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**